# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| EMPLOYERS MUTUAL CASUALTY COMPANY, ) ) ) | |
| Plaintiff, ) | Case No. 10-00361-CV-W-DGK |
| ) v. ) ) | |
| LUKE DRAILY CONSTRUCTION COMPANY, INC., and ZZZ-2, LLC, ) ) ) | |
| Defendants. ) | |

## ORDER

Pending before the Court are the Plaintiff's and the Defendant Luke Draily Construction Company, Inc.'s ("Draily") cross-Motions for summary judgment. Docs. 42-45, 49-52. For the reasons discussed herein, the Plaintiff's Motion is GRANTED and Draily's Motion is DENIED.

## Background

This case comes before the Court via the Plaintiff's claim for declaratory judgment that it is required to neither defend nor indemnify its insured Draily in a state lawsuit brought by Defendant ZZZ-2, LLC ("ZZZ"). Doc. 1. The Plaintiff insured Draily on a Commercial General Liability ("CGL") policy. Doc. 41[1] at ¶ 3. On September 24, 2003, Draily entered a contract with ZZZ to serve as general contractor on a hotel construction project in Las Cruces, New Mexico. *Id.* at ¶ 5. Draily subcontracted certain aspects of the project to Mimbela Construction Company, Inc., which in turn subcontracted the roof work to Roof Toppers of El Paso, Inc. *Id.* at ¶¶ 7, 9. Roof Toppers failed to install the roof properly. *Id.* at ¶ 13. Draily expressed concerns about Roof Toppers work on the roof during construction. *Id.* at ¶12. The hotel was completed,

---

[1] Prior to filing their cross-Motions, the parties executed this stipulation of facts, from which the Court draws the relevant background facts.

passed inspection and opened for business in late 2004. *Id.* at ¶¶ 14-17. Shortly thereafter, ZZZ discovered leaks in the roof and that tiles had fallen off, and gave Draily notice. *Id.* at ¶¶ 18-20. After originally filing suit in New Mexico, ZZZ re-filed an identical action against Draily in the Circuit Court of Jackson County, Missouri, alleging breach of their construction contract. *Id.* at ¶¶ 24-25. Specifically, ZZZ sued for breach of contract, breach of the covenant of good faith and fair dealing, breach of express warranty, breach of implied warranty of fitness for a particular purpose, negligence, and failure to obtain a New Mexico contractor's license.[2] *Id.* at ¶ 27. The parties reached a consent judgment in favor of ZZZ in the underlying lawsuit for $360,000—$150,000 of which has already been paid and is not at issue here. *Id.* at ¶ 31, Doc. 41-10.

**Standard**

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to show a material issue for trial, the nonmoving party must do more than simply show that there is some "metaphysical doubt" regarding the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Rather, the nonmoving party must "cit[e] to particular parts of materials in the record" that show a genuine issue for trial or "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed R. Civ. P. 56(c)(1). In this case, the parties have stipulated to all material facts and agree that their motions can be decided on purely legal, contract interpretation grounds. Docs. 41, 43 at 1, 49 at 1. The applicable policy contained the following provisions:

---

[2] This final count has been dismissed and is no longer before the Court for consideration. *Id.* at ¶ 28.

## COVERAGE A: BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation , change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:
   (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

   (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

   (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

2. **Exclusions**

This insurance does not apply to:

**j.** **Damage To Property**

"Property damage" to:

\* \* \*

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

\* \* \*

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k.** **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

4

  **l.** **Damage To Your Work**

    "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".
    This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

[Definitions]

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

17. "Property damage" means:

  a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

21. "Your product":

  a. Means:

    (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

      (a) You;
      (b) Others trading under your name; or
      (c) A person or organization whose business or assets you have acquired; and

    (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

  b. Includes

    (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    (2) The providing of or failure to provide warnings or instructions.

  c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

 a. Means:

  (1) Work or operations performed by you or on your behalf; and

  (2) Materials, parts or equipment furnished in connection with such work or operations.

 b. Includes

  (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

  (2) The providing of or failure to provide warnings or instructions.

Doc. 41 at ¶ 30. In determining choice of law, the Court will apply the forum state's choice of law rules. *Eggleton v. Plasser & Theurer Export Von Bahnbaumaschinen Gesellschaft, MBH,* 495 F.3d 582, 586 (8th Cir. 2007). Missouri law indicates that the most important factor in determining which law will apply to the interpretation of an insurance contract is the forum with the "principal location of the insured risk during the term of the policy," which was Missouri due to Draily's principal location. *Viacom, Inc. v. Transit Cas. Co.,* 138 S.W.3d 723, 725 (Mo. 2004), Doc. 41 at ¶ 2. Unambiguous insurance contracts are to be interpreted strictly, but ambiguities should be resolved against the insurer. *Lynch v. Shelter Mut. Ins. Co.,* 325 S.W.3d 531, 535 (Mo. Ct. App. 2010).

**Discussion**

The parties' arguments are largely the same and focus on the following issues: whether the underlying lawsuit alleges an "occurrence" as defined by the policy, whether the underlying lawsuit alleges "property damage" as defined by the policy, and whether various exclusions apply.

### A. The Underlying Petition Does Not Allege An Occurrence Required To Trigger Coverage

The relevant policy covers "bodily injury" and "property damage" caused by "occurrences," making an allegation of an occurrence the threshold issue to determining if there is coverage. The policy defines an occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Though the policy does not define "accident," Missouri courts have—in a CGL policy case—defined accident as:

> "An event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event. Hence, often, an undesigned and unforeseen occurrence of an afflictive or unfortunate character; a mishap resulting in injury to a person or damage to a thing; a casualty; as, to die by an accident."

*American States Ins. Co. v. Mathis,* 974 S.W.2d 647, 650 (Mo. Ct. App. 1998) (citations omitted). Missouri law is clear that pure contract claims do not constitute occurrences or accidents under a CGL policy. *See Id.* (holding that "[u]nder this definition breaches of contract are not 'accidents' or 'occurrences'"); *Columbia Mut. Ins. Co. v. Epstein,* 239 S.W.3d 667, 672 (Mo. Ct. App. 2007) (finding some coverage, but distinguishing *Mathis* as a "pure[]…breach of contract case"). Of ZZZ's claims, only one—negligence—is not explicitly contractual in nature. *See Hess v. Appleton Mfg. Co.,* 148 S.W. 179, 180 (Mo. Ct. App. 1912) (noting that "an action for a breach of warranty is founded on contract…"), *City of St. Joseph v. Lake Contrary Sewer Dist.,* 251 S.W.3d 362, 369 (Mo. Ct. App. 2008) (finding that the covenant of good faith and fair

dealing is implied in all contracts).  Accordingly, ZZZ's claims for breach of contract, breach of warranty and breach of the covenant of good faith and fair dealing are not subject to coverage under a CGL policy as a matter of law.

Regarding the remaining claim, while it is denominated "negligence," further examination suggests that this is not truly a negligence claim, but rather a contract claim by another name.  For example, the First Amended Petition states that Draily was "negligent" in "fail[ing] to construct the roofing required…in accordance with the *plans and specifications*…fail[ing] to construct the roofing required…in accordance with industry standards and workmanship…failing to comply with the Project *plans and specifications*…" Doc. 45-6 at 17.  Such contractual language is telling.  The remaining allegedly breached duty— "fail[ure] to properly oversee, instruct, inspect, supervise and/or otherwise assure sub-contractors were performing their work in a good and workmanlike manner…"—is more in line with the tort of negligent hiring or negligent supervision.  *Id., see also Lonero v. Dillick,* 208 S.W.3d 323, 329 (Mo. Ct. App. 2006) (describing elements of negligent hiring/retention).  But while the remaining claim may not *purely* a contract count, there still must have been an accident and consequently an occurrence to trigger coverage under the Plaintiff's policy.  Roof Toppers did not accidentally install the roof; it did so intentionally but poorly.  *See Cincinnati Ins. Co. v. Venetian Terrazzo, Inc.,* 198 F. Supp. 2d 1074, 1079 (E.D. Mo. 2001) ("Venetian's argument is without merit that its alleged negligence, *or the negligence of another party* in pouring the cement subfloor, constituted an 'accident,' and hence an 'occurrence' within the meaning of either insurance policy.") (emphasis added).  While not binding, *Venetian* is persuasive to the Court and consistent with the weight of Missouri law as stated in *Mathis*:

> It is not the function of the CGL policy to guarantee the technical competence and integrity of business management.  The CGL policy does not serve as a

> performance bond, nor does it serve as a warranty of goods or services. It does not ordinarily contemplate coverage for losses which are a normal, frequent or predictable consequence of the business operations. Nor does it contemplate ordinary business expense, or injury and damage to others which results by intent or indifference.

*Mathis,* 974 S.W.2d at 649 (citations omitted).

Draily cites *D.R. Sherry Construction, Ltd. v. American Family Mutual Insurance Company* to argue that the Missouri Supreme Court has recently changed its views about what constitutes an accident or occurrence. 316 S.W.3d 899 (Mo. 2010). *Sherry* cites *Mathis* for the definition of accident, but makes clear that an accident is "not necessarily[3] a sudden event; it may be the result of a process." *Id.* at 905 (quoting *Epstein,* 239 S.W.3d at 672). *Epstein* reaffirms the *Mathis* holding that breaches of contract are not accidents or occurrences under a CGL policy, and further distinguishes "the other myriad of cases cited by Columbia…[as] not controlling in this jurisdiction, *and/or they are based on breach of contract claims, faulty workmanship claims and/or negligence claims,* whereas the sole claim here is for products liability." *Epstein,* 239 S.W.3d at 672. The issue in *Sherry* was whether an occurrence took place when a house was built or when the damage first manifested itself. The Missouri Supreme Court found that progressive damage because "the home *inadvertently* was constructed on soil that was incapable of providing adequate support…[an] *unforeseeable circumstance*…" alleged an occurrence during the policy period. *Sherry,* 316 S.W.3d at 906 (emphasis added). The parties agree that Draily expressed concerns about the "quality of work" from Roof Toppers during the project, describing it as a "major concern." Doc. 41 ¶ 12. For Draily to argue now that problems on the roof were unforeseeable is not supported by the record, because problems were in fact *foreseen*. Whatever happened in the interim to assuage Draily's concerns does not

---

[3] *Sherry* does not state any abrogation or negative view of *Mathis*. Rather, it clarifies the *Mathis* definition of accident to show that it is broader than *Mathis* might suggest.

change the fact that it actually foresaw roof problems during construction. In the event that the faulty workmanship claim can survive the initial occurrence threshold, *Sherry* states that the "determinative inquiry…is whether the insured foresaw or expected the injury or damages." The stipulated facts show that Draily did.

For all of these reasons, the Court finds that no occurrence necessary to trigger coverage is alleged in the underlying suit.

**B. The Plaintiff's Proposed Exclusions Do Not Apply**

The burden is on the insurer to show that an exclusion from coverage applies. *Haulers Ins. Co. v. Pounds,* 272 S.W.3d 902, 905 (Mo. Ct. App. 2008). The Plaintiff asserts that Exclusion j(6) and k apply. Exclusion j(6) reads follows:

This insurance does not apply to

\* \* \*

j. "Property damage" to:

\* \* \*

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

\* \* \*

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

The "products-completed operations hazard" will apply to prevent application of this exclusion. This portion of the policy includes in coverage

"[A]ll…'property damage' occurring away from premises you own or rent and arising out of 'your work' or 'your product' except

\* \* \*

(2) Work that has not yet been completed or abandoned. However, 'your work' will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed

\* \* \*

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete will be treated as completed."

There is no dispute that the job site at issue was not owned or rented by Draily. The Plaintiff therefore asserts that the damage occurred when the faulty workmanship was performed—in other words, before the job was completed, thus preventing application of the products-completed operations hazard. This argument conflates "property damage" with the "occurrence" that caused it. The policy's terms make clear that they are not necessarily coterminous in that property damage *arises out of* an occurrence. The stipulated facts show that while Draily had concerns about the roof work during construction, the actual damage at issue—lost tiles and water damage—did not occur until after substantial completion of the project and the hotel actually opened for business. Doc. 41 at ¶¶ 14-18.

Next, the Plaintiff proposes that exclusion k will apply, excluding damages for damage to "your product." The definition of "your product" specifically excludes real property. While the policy does not define real property, it is commonly defined in legal settings as "Land and anything growing on, attached to or *erected on it...*" *Black's Law Dictionary* 1254 (8th ed. 2004) (emphasis added). Buildings, such as hotels, are obviously erected on land and are generally considered real property. The Plaintiff's argument against this is that *Epstein* held the exclusion to apply to a foundation, which is also part of a building. *Epstein,* 239 S.W.3d at 674.

11

*Epstein* is distinguishable as a case in which the concrete itself—not the foundation formed by the concrete—was alleged to be defective on a products liability theory. Because the concrete vendor used allegedly defective concrete, the Missouri Court of Appeals found this exclusion applicable, though it found that this would only preclude liability for damage to the foundation. *Id. Epstein* might have some application on this point if the issue were defective roof tiles, but the underlying petition focuses on faulty work rather than defective products. *See, e.g.,* Doc. 45-6 at ¶ 23 ("Upon inspection, the tiles in the Valleys on the roof of the Project improperly have no fasteners or wires, in violation of the specifications on the manual."). As neither of these exclusions apply, and the Plaintiff has argued for no others, the Court finds that it has not carried its burden to show an exclusion from coverage.

## Conclusion

The weight of Missouri law indicates that a standard CGL policy with provisions such as the policy at issue cannot be used to provide coverage for breach of contract and faulty workmanship claims. In the event that *Sherry* represents a shift allowing faulty workmanship claims on a CGL policy, it precludes this case because the insured foresaw the issue. Draily's only remaining counterclaim count is for a declaration of coverage in its favor. Accordingly, the Plaintiff's Motion for summary judgment is GRANTED and Draily's Motion is DENIED.

**IT IS SO ORDERED**

Dated: June 29, 2011     /s/ Greg Kays
GREG KAYS,
UNITED STATES DISTRICT JUDGE